Filed 2/21/25  P. v. Houston CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B328812 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. A569469 |
| v. | |
| STEPHEN ARTHUR HOUSTON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jared D. Moses, Judge.  Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Stephen Arthur Houston appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6.[1] We affirm because the record of conviction establishes Houston is ineligible for resentencing as a matter of law.

**FACTS AND PROCEDURAL BACKGROUND**

1.  ***Houston shoots and kills his wife Donna***

On November 25, 1985, Houston went to his wife's workplace in Monterey Park.[2] He took with him a 12-gauge shotgun he'd bought the day before. (*Houston I*.)

Around 9:00 a.m. that morning, Steven Price, a coworker of Houston's wife Donna Johnson, had gone out the rear door of the office. He was waiting for Johnson to come out; the two were going to transport copiers that had been loaded into a van. Seconds later Price heard Johnson yell, " 'No, no.' " Price then heard " 'a huge explosive sound' " and Johnson, who had gone

---

[1] References to statutes are to the Penal Code. Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2] We refer to the factual background from Houston's trial only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) On September 13, 2023, Houston filed a request to augment the record on appeal with the reporter's transcripts, jury instructions, and verdict forms from his trial. We treated Houston's request to augment as a request for judicial notice of the records in his direct appeal, Case No. B031974, and granted that request. In addition, we granted the Attorney General's "Motion for Judicial Notice" of the 1990 opinion in that direct appeal, *People v. Houston* (Jan. 29, 1990, B031974) [nonpub. opn.] (*Houston I*).

out the rear door, fell back into the office.  Price ran out the door and saw Houston holding a shotgun.  Price locked eyes with Houston, "who appeared to be 'stone cold sober.' "  Houston turned and walked away.  (*Houston I*.)

Johnson died from a shotgun wound to the neck.  According to a medical examiner, the fatal blast had been fired from a distance of three yards.  (*Houston I*.)

## 2.    *The charges, trial, verdict, and sentence*

The People charged Houston with Johnson's murder.  The People alleged Houston "intentionally killed the victim while lying in wait," and that he personally used a firearm—a shotgun—in the commission of the crime.

At his trial in 1987, Houston testified on his own behalf.  Houston told the jury he and Johnson had "quite a few" problems in their marriage.  On November 24, 1985, Houston bought a shotgun.  He was going to commit suicide.  He "put[ ] a live round in the chamber of the gun" and put the gun in his van.  The next morning, Houston drove to Johnson's workplace.  He saw Johnson "in close contact with another man."  Houston told the jury, "It looked like they were laughing [and] having a good time."

Houston testified he "just started getting all these flashbacks of all these things that had happened and she put me through and just like an explosion went out in my head. I didn't have any control."  When asked on cross-examination if he had concluded Johnson "deserved to die," Houston answered, "At that point I felt she did, yes."  Houston walked back to his van and "grabbed" his shotgun.  He started toward the back entrance of the building.  Then "[t]he door came open

3

and my wife came out and I shot her." Houston got back in his van and drove away. He later put the shotgun in a dumpster.

Houston also called as defense witnesses at trial a clinical psychologist who had assessed him in the county jail and a psychiatrist who had diagnosed Houston with "major depressive disorder" in 1985.

The trial court instructed the jury with (among other instructions) CALJIC Nos. 8.00 (Homicide–Defined), 8.10 (Murder–Defined), 8.11 ("Malice Aforethought"–Defined), 8.20 (Deliberate and Premeditated Murder), 8.25 (Murder by Means of Lying in Wait), 8.30 (Unpremeditated Murder of the Second Degree), 8.37 (Manslaughter–Defined), 8.40 (Voluntary Manslaughter–Defined), 8.42 (Sudden Quarrel or Heat of Passion and Provocation Explained), 8.44 (No Specific Emotion Alone Constitutes Heat of Passion), 8.50 (Murder and Manslaughter Distinguished), 8.52 (Murder or Manslaughter–Cooling Period), 8.70 (Duty of Jury as to Degree of Murder), 8.71 (Doubt Whether First or Second Degree Murder), 8.72 (Doubt Whether Murder or Manslaughter), 8.73 (Evidence of Provocation May Be Considered in Determining Degree of Murder), 8.74 (Unanimous Agreement as to Offense–First or Second Degree Murder or Manslaughter), 8.80 (Special Circumstances–Introductory), 8.81.15 (Special Circumstances–Murder While Lying in Wait), and 17.19 (Finding if Defendant Personally Used a Firearm in Commission of a Felony).

In light of Houston's testimony and the expert testimony given by the two medical professionals who had evaluated him, the court also gave CALJIC Nos. 2.10 (Statements Made by Defendant to Physician), 2.80 (Expert Testimony), and 3.36 (Evidence of Mental Disease–Received for Limited Purpose).

The court did not instruct Houston's jury on felony murder, the natural and probable consequences doctrine, or any sort of accomplice liability.

The jury convicted Houston of first degree murder and found the lying-in-wait and firearm use allegations true. The trial court sentenced Houston to two years for the firearm enhancement and life without the possibility of parole for the murder. In 1990 another panel of this court affirmed Houston's conviction. (*Houston I*.)

### 3.    *Houston's petition for resentencing*

Some 37 years after Houston killed Johnson, Houston—representing himself—filed a form petition for resentencing under section 1172.6. Houston checked boxes on the form stating, (1) "[A]n . . . information . . . was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ," (2) he "was convicted of **murder** . . . following a trial . . . ," and (3) he "could not presently be convicted of murder . . . because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Houston also checked a box that stated, "Having presented a facially sufficient petition, I request that this Court appoint counsel to represent me."

The court appointed counsel for Houston. On May 19, 2022, the prosecution filed an opposition to Houston's petition. The prosecution contended Houston was ineligible for resentencing because he was the actual killer. The prosecution noted the trial court had not instructed Houston's jury on felony murder or the natural and probable consequences doctrine.

5

The prosecution stated that, at trial, Houston had "admitted to shooting" Johnson.  Along with its opposition brief, the prosecution submitted a CD "that contain[ed] all trial transcripts in this case."

Houston's counsel filed a reply on January 18, 2023.  Counsel acknowledged the court's "perceptive" [*sic*] that Houston had been "found to be Killer" [*sic*].  But, counsel argued, "the petitioner at an evidentiary hearing can address that he had no intent to kill under the circumstances."  Counsel also asserted, "This court should rely on the trial transcripts and trial record and not necessarily the appellate opinion."

Counsel appeared before the court on January 18, 2023.[3]  The court gave counsel its tentative:  that Houston was "legally ineligible for relief."  The court said it had reviewed "the record of conviction," and it was "not making any findings of fact":  "I'm just looking right at the record."

The court heard argument from counsel.  Houston's counsel stated,

> "I did review the entire record, the assertions as to the killing, the killing of a wife.  And on its face it would appear that, based on the record, that the jury did make some findings;

---

[3]    Houston apparently was not present, by Webex or otherwise.  There is no indication in the record that Houston's counsel asked the court to order Houston out from state prison for the hearing.  Nor did counsel object to proceeding in his client's absence.  On appeal, Houston has not raised any issue about the court proceeding without him there. (Cf. *People v. Basler* (2022) 80 Cal.App.5th 45, 51, 57–58 [petitioner has constitutional right to be present at evidentiary hearing conducted *after* order to show cause has issued].)

6

> however, my position is that at least from
> Mr. Houston's standpoint, that determinations
> as to specific intent to kill versus heat of
> the moment, and that those issues would be
> the subject of an OSC."

The prosecutor said he would "submit on the pleadings."

The court stated it had "reviewed the record of conviction, including the minute orders, abstracts of judgment, verdict forms, jury instructions, and trial transcripts." The court continued,

> "I am not relying upon any appellate opinion or
> any recitation of facts in any appellate opinion.
> [¶] And I find that Mr. Houston has failed to
> make a prima facie showing that he is entitled
> to relief under Section 1172.6. [¶] In fact the
> record of conviction clearly establishes that
> he is ineligible for relief as a matter of law. [¶]
> The jury convicted him of first degree murder
> of his wife and found true the lying-in-wait
> special circumstance. [¶] The jury also found
> true a special allegation, firearms allegation
> under 12022.5(a), that a person used a shotgun
> to kill his wife. And the only theory of first
> degree murder that the jury was instructed on
> was willful and deliberate and premeditated
> murder. There were no co-defendants,
> there were no accomplices, there were no
> co-conspirators. [¶] The court did not instruct
> . . . on aiding and abetting, natural and
> probable consequences, or felony murder. [¶]
> There is no possible theory in which malice

7

could be imputed in this case. He was the actual and direct perpetrator of a shotgun murder on his wife. And he testified at trial and admitted that he shot his wife with a shotgun. [¶] So the record of conviction clearly demonstrates that he acted with malice aforethought when he killed his wife, and, therefore, is not entitled to relief."

The court issued a written order the same day saying the same thing.

## DISCUSSION

### 1. *Section 1172.6*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended existing law on accomplice liability for murder " 'to ensure that murder liability is not imposed on a person who is not the actual killer . . . .' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, quoting Stats. 2018, ch. 1015, § 1(f); § 189, subd. (e)(1).) To accomplish this goal, Senate Bill 1437 limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his individual criminal culpability. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).) Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, extended resentencing eligibility to individuals convicted of murder on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (Stats. 2021, ch. 551, § 2(a).)

Senate Bill 1437 also provided an avenue for a person convicted under the former law to petition the sentencing court to vacate his conviction and be resentenced if he could no longer be convicted under the amended law. (*People v. Strong* (2022) 13 Cal.5th 698, 708–709; *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.) If the petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and hold an evidentiary hearing. At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty under the amended law. (§ 1172.6, subds. (c), (d)(3); *Strong*, at pp. 708–709.)

At the prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid.*) The jury instructions are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,' " which may not take place until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted on other grounds Sept. 23, 2020, S263939 and held for *Lewis*, review dismissed Nov. 17, 2021, and opinion citable to the extent not inconsistent with *Lewis*; see *People v. Estrada* (2022) 77 Cal.App.5th 941, 949

9

[jury instructions showed trial court never instructed the jury on the natural and probable consequences doctrine; summary denial of petition affirmed].) The verdicts also are part of the record of conviction. (*People v. Harden* (2022) 81 Cal.App.5th 45, 47–48, 55–56 (*Harden*) [affirming summary denial of petition; jury instructions and verdicts irrefutably established as a matter of law that defendant was ineligible for resentencing].)

We independently review the trial court's determination that Houston failed to make a prima facie showing. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *Harden*, *supra*, 81 Cal.App.5th at p. 52.)

**2.** ***As the actual killer, Houston is ineligible for relief under section 1172.6 as a matter of law***

Section 1172.6 is all about accomplice liability. Here, there is absolutely nothing in the record of conviction to suggest Houston acted as an accomplice in his wife's murder. The court at Houston's trial did not instruct the jury on the natural and probable consequences doctrine, or on any other theory involving aiding and abetting or accomplice liability. Houston testified—at considerable length and in considerable detail—that he bought a shotgun, drove to his wife's place of work, returned to his van when he saw her talking and laughing with a man, "grabbed" his gun, returned to the building, and shot Johnson when she came out the door. Houston's jury convicted him of willful, deliberate, premeditated murder and found true both lying-in-wait and personal use of a firearm allegations. As the actual killer, Houston is ineligible for relief as a matter of law. (See *Harden*, *supra*, 81 Cal.App.5th at pp. 53–54, 56; *People v. Edwards* (2020) 48 Cal.App.5th 666, 669, 671, 674, disapproved of on other grounds in *Lewis*, *supra*, 11 Cal.5th at p. 963

10

[affirming summary denial of resentencing petition where record of conviction showed petitioner was actual killer]. Cf. *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [defendant not entitled to resentencing because he "was the actual killer and the only participant in the killing"].)

## DISPOSITION

We affirm the order denying Stephen Arthur Houston's petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.

11